UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN C. WALTERS,                                    Case No. 11-15171

          Plaintiff,                            Bernard A. Friedman
v.                                                   United States District Judge

COMMISSIONER OF SOCIAL SECURITY,      Michael Hluchaniuk
                                                     United States Magistrate Judge

          Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS MOTIONS FOR SUMMARY JUDGEMENT (Dkt. 11, 14)

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On November 23, 2011, plaintiff Steven C. Walters filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Bernard A. Friedman referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.

### B.   Administrative Proceedings

Plaintiff filed the instant claims for disability insurance benefits and

1

supplemental security income benefits on August 17, 2010 and August 18, 2010, respectively.  (Dkt. 7-5, Pg ID 232-38).[1]  The claim was initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on October 20, 2010.  (Dkt. 7-3, Pg ID 114-15).  Plaintiff requested a hearing and on June 3, 2011, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Janice E. Shave, who considered the case *de novo*.  (Dkt. 7-2, Pg ID 60-96).  In a decision dated July 15, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 38-51).  Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when, after review of additional exhibits (Dkt. 7-2, Pg ID 35),[2] the

---

[1]The record indicates that plaintiff filed a prior claim for disability insurance benefits and supplemental security income benefits on October 26, 2006.  On January 14, 2007, the ALJ determined that plaintiff was disabled from January 6, 2008 through October 21, 2007, and that on October 22, 2007, medical improvement occurred related to plaintiff's ability to work and thus plaintiff's disability ended on October 22, 2007.  (Dkt. 7-3, Pg ID 98-113).  This became the final decision of the Commissioner. (Dkt. 7-3, Pg ID 117).

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Appeals Council, on September 23, 2011, denied plaintiff's request for review.
(Dkt. 7-2, Pg ID 32-36); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th
Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's
motion for summary judgment be **DENIED** in part, and that this matter be
**REMANDED** for further consideration.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 43 years old at the time of the administrative hearing and was
thus a "younger" individual.  (Dkt. 7-2, Pg ID 89).  Plaintiff's relevant work
history included work as an auto repairer, delivery driver, courier and fuel truck
driver.  (Dkt. 7-6, Pg ID 326).  In denying plaintiff's claims, defendant
Commissioner considered disc degeneration, herniated disc, depression, vertigo,
tendinitis, and arthritis as possible bases of disability.  (Dkt. 7-6, Pg ID 251).

The ALJ applied the five-step disability analysis to plaintiff's claims and
found at step one that plaintiff had not engaged in substantial gainful activity since
March 10, 2010, the alleged onset date.  (Dkt. 7-2, Pg ID 43). At step two, the ALJ
found that plaintiff's degenerative disc disease and depression were "severe"
within the meaning of the second sequential step.  *Id.*  At step three, the ALJ found

3

that plaintiff does not have an impairment or combination of impairments that

meets or medically equals one of the listed impairments.  (Dkt. 7-2, Pg ID 43-45).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to

perform:

> sedentary work . . . except he can lift no more than three
> pounds from floor to waist level.  He can stand for a
> maximum of two hours during an eight-hour workday,
> and sit for up to eight hours in a normal eight-hour
> workday.  He requires the ability to change positions
> between sitting and standing at will.  The [plaintiff] can
> never climb ladders, ropes or scaffolds, or perform any
> overhead reaching.  The [plaintiff] can have no exposure
> to hazardous materials or vibrations.  He is never to
> operate foot or leg controls.  The [plaintiff] cannot drive.
> He can rarely climb stairs or stoop.  The [plaintiff] can
> occasionally crouch.  He can perform simple, routine and
> repetitive tasks."

(Dkt. 7-2, Pg ID 45-49).  At step four, the ALJ found plaintiff unable to perform

his past relevant work.  (Dkt. 7-2, Pg ID 49).  At step five, the ALJ denied plaintiff

benefits because plaintiff could perform a significant number of jobs available in

the national economy.  (Dkt. 7-2, Pg ID 50-51).

> **B.     Plaintiff's Claims of Error**

Plaintiff argues that the ALJ failed to give appropriate controlling weight to

the opinions of his treating sources that plaintiff could not perform work at the

sedentary level.  Plaintiff states that Lisa Kramp, PT, DPT, CWCE conducted a

functional capacity evaluation of plaintiff on June 24, 2008, prior to plaintiff's

4

claimed onset date, and concluded that plaintiff was not capable of performing his prior job as a diesel mechanic and instead was "best suited to the sedentary category" of work in an occupation that allows frequent postural changes with lifting requirements of 10 pounds or less. (Dkt. 7-7, Pg ID 433-52). Ms. Kramp reported that the test findings suggest the presence of full physical effort on plaintiff's behalf and that his subjective reports of pain and associated disability appear to be both reasonable and reliable. *Id.* Plaintiff complains that the ALJ's decision is unclear because he first stated that he was assigning "little weight" to Ms. Kramp's opinion because that opinion was on an issue reserved to the Commissioner, but then later stated that he was assigning "some weight" to Ms. Kramp's opinion.

Paula Myers, O.T.R., performed an Occupational Therapy Initial Evaluation of plaintiff on October 11, 2010. (Dkt. 7-7, Pg ID 383-84). Plaintiff stated that his goal for rehabilitation was "[t]o see if I can get SSI." *Id.* Ms. Myers noted on observation that plaintiff demonstrated active range of motion within normal limits bilaterally in both upper and lower extremities and strength at 4/5 in lower extremities, with reports of pain. *Id.* Plaintiff reported that he could stand for only five to ten minutes, sit for ten minutes and walk for five minutes, and lift and carry less than five pounds, and Ms. Myers noted that plaintiff demonstrated difficulty moving from sit to stand and returning to the chair, and difficulty in stooping and

5

kneeling. *Id.* Ms. Myers concluded that plaintiff does not evidence ability to work at the sedentary level of physical demand and thus discharged him from occupational therapy. *Id.* Plaintiff complains that the ALJ's stated reasons for assigning "little weight" to Ms. Myers' opinion–because the opinion is on an issue reserved to the Commissioner and because Ms. Myers appears to have relied quite heavily on plaintiff's subjective reports–are incorrect and that the records of plaintiff's treating physicians must be considered as controlling and would direct a finding of disabled.

Plaintiff also contends that the ALJ's RFC assessment is not supported by substantial evidence. According to plaintiff, the Commissioner improperly relies on medical evidence from 2007 through 2009, which predates plaintiff's claimed onset date of March 10, 2010, and fails to sufficiently analyze plaintiff's treatment records post-dating the onset date, citing only Ms. Myer's evaluation and two doctor's appointments in January and March 2011. Plaintiff complains that the ALJ only noted that Neurontin reduced plaintiff's radiculopathy symptoms, but failed to note the following statement that "He really needs to see an orthopedic surgeon or chronic pain clinic. He needs to get insurance with us." (Dkt. 7-7, Pg ID 517). Plaintiff argues that his extensive treatment record from 2010 and 2011, which was not addressed in the ALJ's decision, gives substantial support for plaintiff's functional limitations. Plaintiff's treating physicians noted positive

6

straight leg raising at 40-50 degrees, decreased side bending left, decreased flexion, and decreased extension (Dkt. 7-7, Pg ID 482), prescribed numerous narcotic pain medications, including Vicodin, Naprosyn, Methadone, Motrin IB, Robaxin, Tramadol, Neurontin, Morphine, Fentanyl patches, Percocet, Selaxin and Ibuprofen (Dkt. 7-7, Pg ID 351, 356, 387, 391, 395-96), and plaintiff had physical therapy and used a TENS unit for pain. (Dkt. 7-7, Pg ID 395-96). According to plaintiff, these treatment records indicate that plaintiff's complaints of pain were credible.

Further, plaintiff contends that objective medical evidence supports his complaints of disabling back pain. Namely, a January 2006 MRI indicates a small posterolateral protrusion of disc material on the right at L4-L5 without evidence of sizeable mass effect and small midline protrusion of disc material at L5-S1, superimposed on diffuse posterior annular bulging of the annulus fibrosis (Dkt. 7-7, Pg ID 410-11), a July 2006 MRI revealed early degenerative disc disease from L3-4 through L5-S1, degenerative facet arthrosis at L3-4 through L5-S1, small right paracentral subligamentous disc protrusion or herniation and small midline soft tissue disc protrusion or herniation at L5-S1 (Dkt. 7-7, Pg ID 413-14), and a 2007 lumbar MRI indicated a small subligamentous soft tissue disc herniation at L4-5 and small midline disc herniation at L5-S1 causing no appreciable mass effect as described. (Dkt. 7-7, Pg ID 416-17).

Plaintiff argues that the ALJ erroneously discounted plaintiff's credibility

regarding the extent of his pain by citing evidence in the record of "positive

Waddell's signs" on several occasions.[3]   Plaintiff states that the ALJ had no basis

to conclude that plaintiff was exaggerating his symptoms and limitations, and

should instead have contacted plaintiff's treating physicians for additional

information.   The ALJ failed to consider plaintiff's persistent efforts to obtain pain

relief and his compliance with his doctors' prescriptions for pain relief.

Further, plaintiff argues that the ALJ's finding that plaintiff could sit for

eight hours in a workday is not supported by substantial evidence in the record

because plaintiff's treating source opined that plaintiff could sit for 10 or 15

---

[3]As the Sixth Circuit recently explained:

> Waddell's signs' are the most well known of several tests developed
> to detect non-organic causes of low back pain.  A positive Waddell's
> sign may indicate that the patient's pain has a psychological
> component rather than organic causes.  While it is a common
> perception in the litigation arena that these signs are proof of
> malingering and fraud, they merely describe a constellation of signs
> used to identify pain in those who need more detailed psychological
> assessments. The literature . . . reveals that there is no association
> between positive Waddell signs and the identification of secondary
> pain and malingering.  Patients with strong psychological components
> to their pain often display these signs as well.

*Minor v. Comm'r of Soc. Sec.*, — Fed. Appx. —, 2013 WL 264348, at *n.15 (6th
Cir. Jan. 24, 2013) (internal quotation marks omitted, internal citations to Samuel
D. Hodge, Jr. & Nicole Marie Saitta, *What Does It Mean When A Physician
Reports That A Patient Exhibits Waddell's Signs?*, 16 Mich. St. Univ. J. Med. & L.
143, 155-56 (2012)).

minutes and the reviewing physician for the Disability Determination Service failed to make any finding regarding how long plaintiff could sit.  In addition, plaintiff testified at the hearing that he lives with his mother and that she does most of the cooking, taking care of his dog, washing dishes and grocery shopping because plaintiff cannot stand long enough to do those chores.

Plaintiff also argues that the ALJ found plaintiff's depression caused moderate restriction of his activities of daily living and mild impairment in his social functioning and concentration, but failed to include any mental limitations in his RFC.  Although the ALJ gave "some weight" to the conclusion of the DDS reviewing mental health professional that plaintiff might have trouble with complex, detailed tasks due to his depression and that plaintiff might function best in small groups, the ALJ's RFC did not include these limitations.  The medical record demonstrates diagnosis, treatment and prescription medication for depression.  The ALJ's RFC limitation to "perform simple, routine, repetitive tasks" therefore is insufficient.

Further, plaintiff contends that the ALJ should have obtained a consultative mental examination of plaintiff because plaintiff claims he was not treating with a psychiatrist due to lack of money necessary to obtain psychiatric treatment. Plaintiff alleges that this resulted in the ALJ erroneously discounting plaintiff's credibility regarding the limiting effects of his depression.  The record evidence

9

revealed that plaintiff had no health insurance and the ALJ erred in discounting

plaintiff's credibility on the basis of sporadic treatment and his failure to receive

counseling for his depression.  In addition, the ALJ's finding that plaintiff was not

on any medication for his depression is contrary to the record evidence which

revealed that he had been prescribed Wellbutrin, Prozac and Cymbalta at different

times.

### C.       The Commissioner's Motion for Summary Judgment

The Commissioner argues that, contrary to plaintiff's claim of error, the ALJ

appropriately weighed the medical opinion evidence in the record in reaching his

finding that plaintiff was not disabled was not required to give "controlling

weight" to the opinion of a physical therapist (Ms. Kramp and Ms. Myers), a nurse

(Ms. McGuire), or plaintiff's spouse, as they are not "physicians" or "acceptable

medical sources" entitled to controlling weight.  Rather, Ms. Kramp, Ms. Myers

and Ms. McGuire are deemed "other medical sources" and the ALJ was not

required to accord controlling weight to those opinions, or even discuss them in the

administrative decision.  According to the Commissioner, the ALJ fairly weighed

the physician and non-physician evidence, and plaintiff's hearing testimony, in

finding that plaintiff could perform a limited range of sedentary work.

The record evidence shows that plaintiff had a history of back pain pre-

dating his claimed March 2010 disability onset date, arising out of a 2006 work

injury.  The ALJ discussed the 2006 and 2007 MRIs and noted that plaintiff denied radiation of his back pain in November 2007 (Dkt. 7-7, Pg ID 424), reported that his previous spinal injections did not help in October 2008 (Dkt. 7-7, Pg ID 456), and reported in December 2009 that he was experiencing back pain and left knee problems, and that his knee occasionally hurt when he squatted down.  (Dkt. 7-7, Pg ID 472).  In addition, Ms. Kramp, a physical therapist, evaluated plaintiff in June 2008 and noted plaintiff could lift 11 pounds and had a normal gait, he could sit for 45 minutes and stand or walk for 35 minutes, and that he tested positive for Waddell signs.  (Dkt. 7-7, Pg ID 433-52).

The record indicates that plaintiff treated with medical professionals at Mid-Michigan Health Services for his complaints of back pain and depression.  On March 25, 2010, plaintiff saw Dr. Roberto Amponin Viguilla, M.D., complaining of fatigue, arthralgias and anxiety, but denied muscle spasms, muscle weakness, myalgias or depression.  (Dkt. 7-7, Pg ID 356-57).  Dr. Viguilla observed that plaintiff appeared well and in no acute distress, he exhibited back tenderness and positive straight leg raising bilaterally, positive Waddell's signs, his judgment, insight and memory were intact and that he scored 48 on the Zung Depression scale, indicating no depression.  *Id.*  The doctor prescribed Vicodin and Naprosyn and advised plaintiff to quit smoking.  *Id.*

Plaintiff returned for a follow-up appointment in June 2010, complained of

11

arthralgias, anxiety and insomnia, but denied muscle spasms, weakness or myalgias and depression.  (Dkt. 7-7, Pg ID 353-55).  Plaintiff's judgment, insight and memory were intact, he again scored 48 on the Zung Depression scale, indicating no depression, and he exhibited back tenderness and positive straight leg raising. *Id.*

Plaintiff was seen by Nurse Practitioner Patricia McGuire two times in August 2010 for complaints of chronic low back pain and dizziness.  (Dkt. 7-7, Pg ID 348-52).  Plaintiff appeared well and in no acute distress, denied radiation of pain or tingling/numbness, demonstrated no trigger point tenderness and no pain in his joints on palpation, full range of motion in his knees and hips, and reported that Wellbutrin did not help his depression.  *Id.*  Plaintiff saw nurse McGuire again in September 2010, complaining of depression.  (Dkt. 7-7, Pg ID 377-79).  Plaintiff stated that he "[w]ants disability" and requested a note stating that he cannot work."  *Id.*  Ms. McGuire noted that all of plaintiff's labs were within normal limits and advised plaintiff that she "feels he needs to get a job, and [she] see[s] no reason to disable him."  *Id.*  Ms. McGuire noted that plaintiff appeared well and in no acute distress, his gait and station were stable, his judgment, insight and memory were intact, his mood and affect appropriate, and that plaintiff complained of lumbar pain when asked to walk on his heels and toes.  *Id.*  Ms. McGuire prescribed Prozac and Ativan for depression and Antivert for vertigo, and

explained that plaintiff is depressed but that there is nothing wrong with him metabolically on his labs. *Id.*

In a follow-up appointment in October 2010, plaintiff reported "he still feels depressed, can't work, still trying for disability, and so on." (Dkt. 7-7, Pg ID 386-87). Plaintiff denied fatigue, appeared well and in no acute distress, but was very negative. *Id.* Ms. McGuire noted an "[i]nappropriate use of vicodin," and that plaintiff "admits pain was so bad when he was stacking wood that he needed 5 per day." *Id.* Ms. McGuire concluded that "[i]f he can stack wood, probably does not need vicodin," and started plaintiff instead on Tramadol, chlorzoxazone and Neurontin, and stopped Prozac and replaced it with Cymbalta. *Id.*

The record indicates that plaintiff continued to treat at Mid-Michigan Health Services through March 2011. He continued to complain of back pain and depression, occasional numbness and tingling in his legs, and exhibit back tenderness on examination with positive straight leg raising, but generally denied fatigue. (Dkt. 7-7, Pg ID 391-92, 395-96, 399-400, 403-04, 508-09). His medications were adjusted, and he reported that Percocet is helpful and reduces his pain by about forty percent. *Id.* Plaintiff had a CAT scan of his back on May 9, 2011 which revealed bulging at L4-L5, but no narrowing between discs or vertebrae. (Dkt. 7-7, Pg ID 514, 516-17). Plaintiff reported that the Neurontin helped reduce the radiculopathy in his legs and that he felt that his pain was

13

reduced because he is under less stress.  *Id.*

Dr. Eric Vanderhaagen, D.O., a state agency physician, reviewed the medical record evidence and evaluated plaintiff's physical residual functional capacity on October 20, 2010.  (Dkt. 7-3, Pg ID 133-35).  He concluded that plaintiff can lift up to 10 pounds occasionally, stand or walk for two hours in an eight-hour workday, never climb ladders, ropes or scaffolds, occasionally crouch, is limited to reaching overhead, and should avoid exposure to vibration and hazards.  *Id.*  Dr. Robert Newhouse, M.D., a state agency psychiatrist, evaluated the record evidence and provided a mental residual functional capacity assessment on October 5, 2010.  (Dkt. 7-3, Pg ID 135-37).  Dr. Newhouse reported that plaintiff is noted to have some depression that is treated with an antidepressant and appears to be well controlled.  *Id.*  Dr. Newhouse concluded that plaintiff may have trouble with complex detailed tasks and that he may function best in small familiar groups, but that he retains the ability to do simple tasks on a sustained basis.  *Id.*

The Commissioner argues that the ALJ discussed the relevant medical evidence in his decision and appropriately found that plaintiff could perform a limited range of sedentary work.  The ALJ also appropriately assessed plaintiff's residual functional capacity.  The ALJ is ultimately responsible for deciding plaintiff's RFC, not plaintiff or his treating professional, and no special weight is afforded even a treating physician on issues reserved to the Commissioner.  *See*

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3rd Cir. 2011). The relevant record evidence supports the ALJ's conclusion that plaintiff did not have disabling work-related limitations.

In response to plaintiff's claim that the ALJ should have ordered a consultative psychological examination and considered plaintiff's alleged inability to afford treatment when evaluating his testimony, the Commissionerwhat argues that plaintiff never alleged that he could not afford mental health counseling and did not present evidence that he could not afford such treatment. Further, the record reflects that plaintiff received treatment and medication for his depression and the ALJ was not required to order a consultative mental examination of plaintiff. The ALJ here had the benefit of the opinions of the state agency reviewing physician and psychologist, who weighed the opinions of the treating sources, including the nurse's notes and the physical therapists' opinions. The record before the ALJ therefore was not insufficient or incomplete and substantial evidence supports the ALJ's decision.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

16

claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

## B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in

19

substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without further
analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

20

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    The ALJ's analysis of plaintiff's "other source" opinions

Plaintiff first argues that the ALJ failed to appropriately weigh the opinions of his claimed "treating sources," particularly the opinions of Lisa Kramp, a physical therapist who opined on June 24, 2008 that plaintiff is best suited for sedentary work secondary to his inability to lift more than 10 pounds, and Paula Myers, an occupational therapist who opined on October 11, 2010 that plaintiff performed below the sedentary exertional level.

21

Under the regulations, a "treating source" entitled to "controlling weight" includes physicians, psychologists, or other "acceptable medical source[s]," and a nurse practitioner, physical therapist or occupational therapist is not considered a "treating source" or other "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). "Because [Ms. Kramp and Ms. Myers are] not [] acceptable medical source[s], the ALJ was not required to provide good reasons for the weight given to [their] opinions under §§ 404.1527(d)(2), 416.927(d)(2)." *Mulkey v. Comm'r of Soc. Sec.*, 2011 WL 4528485, at *7 (W.D. Mich. June 14, 2011) (noting there is no requirement that the ALJ articulate good reasons for his or her decision assigning specific weight to the opinion of such a source), *adopted by* 2011 WL 4528479 (W.D. Mich. Sept. 29, 2011).

Rather, Ms. Kramp and Ms. Myers are considered to be an "other source" that the agency "may also use [as] evidence . . . to show the severity of [the claimant's] impairment(s) and how it affects his ability to work." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *see also Phillips v. Comm'r of Soc. Sec.*, 2008 WL 4394274, at *4 (W.D. Mich. July 2, 2008) (holding that even though the nurse practitioner treated plaintiff, her opinion is viewed as evidence from an "other source"). SSR 06-03p provides that "[o]pinions from . . . medical sources [] who are not technically deemed 'acceptable medical sources' under [the agency's] rules[ ] are important and should be evaluated on key issues such as impairment

22

severity and functional effects." SSR 06-03p. However, there is no requirement that the ALJ must expressly discuss every piece of record evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").  Rather, "SSR 06-03p requires an ALJ to consider the opinions expressed by these 'other' medical sources." *Phillips*, 2008 WL 4394274 at *4; *see also Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Consistent with SSR 06-03p, the ALJ properly "considered" Ms. Kramp's and Ms. Myers' opinions, as well as plaintiff's medical history, starting with his back injury in 2006, his MRIs in 2006 and 2007, and his treatment records through 2011.  (Dkt. 7-2, Pg ID 46-49).  The ALJ explained that he assigned little weight to the opinions of Ms. Meyers and Ms. Kramp because opinions such as theirs that a claimant is "disabled," "unable to work," "can or cannot perform a past job" or the like are not medical opinions but are administrative findings reserved for the Commissioner.  He further explained that their opinions as to plaintiff's residual functional capacity were inconsistent with the medical evidence of record.  (Dkt. 7-2, Pg ID 47-48).  Ms. Kramp noted that plaintiff demonstrated the ability to lift up

23

to 11 pounds, had a normal gait, and that plaintiff could sit for 45 minutes, stand for 35 minutes, and walk for 35 minutes.  (Dkt. 7-7, Pg ID 433-54).  Ms. Kramp also noted that plaintiff tested positive for Waddell signs, presenting three out of seven inappropriate responses, and that "[d]uring the intake interview process, [plaintiff] was noted to show no signs of physical discomfort," but concluded that plaintiff's "subjective reports of pain and associated disability [appear] to be both reasonable and reliable."  *Id.*

The ALJ further noted that "Ms. Myers appears to have relied quite heavily on subjective reports of the claimant."  (Dkt. 7-2, Pg ID 47).  Ms. Myers evaluated plaintiff in October 2010 and observed that plaintiff demonstrated an active range of motion within normal limits bilaterally in both upper and lower extremities, and his strength in his legs was tested as 4/5, with reports of pain.  (Dkt. 7-7, Pg ID 383-84).  Ms. Myers noted that plaintiff reported he could stand for five to ten minutes and sit for 10 minutes, he could lift five pounds, and observed shifting after eight minutes, and that plaintiff demonstrated difficulty moving from sit to stand and returning to the chair and difficulty in stooping and kneeling.  *Id.*  Ms. Myers also noted that plaintiff's stated goal for rehabilitation was "To see if I can get SSI."  *Id.*

The ALJ thus properly considered and weighed Ms. Kramp's and Ms. Myers' opinions, as "other sources," with the medical evidence in the record, and

his finding affording them "little weight" is supported by substantial evidence. While the ALJ's explanation is perhaps not as exhaustive as plaintiff might desire, it was sufficient. *See Mulkey*, 2011 WL 4528485, at *7. Accordingly, plaintiff's claim of error should be denied.

### 2.   Plaintiff's credibility

Plaintiff contends that the ALJ failed to adequately assess his credibility concerning the intensity and persistence of his symptoms. As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute a disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a). Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004). The standard for evaluating subjective complaints of disabling pain was articulated by the Sixth Circuit in *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847 (6th Cir. 1986) as follows:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the

25

> condition; or (2) whether the objectively established
> medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling
> pain.

*Id.* at 853.

"It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (*quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).  A court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  However, an ALJ who rejects a claimant's testimony must "clearly state" the reasoning for doing so.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) (an ALJ's credibility determination regarding subjective complaints must be reasonable and supported by substantial evidence).  "[W]here an ALJ's reasoning underlying his decision to discount a claimant's credibility is partially but not fully flawed, remand may nonetheless be appropriate."  *Kerr v. Comm'r of Soc. Sec.*, 2013 WL 388987, at *16 (E.D. Mich. Jan. 10, 2013) (citing *Allan v. Comm'r of Soc. Sec.*,

26

2011 WL 2670021(E.D. Mich. July 8, 2011) (citing *Ford v. Astrue*, 518 F.3d 979,

982-93 (8th Cir. 2008))), *adopted by* 2013 WL 388176 (E.D. Mich. Jan. 31, 2013).

Plaintiff stated that he lives with his mother and usually sits in his recliner

most of the day, occasionally can cook or do laundry, can walk 100 yards before

needing to take a break, can sit for 10 to 15 minutes, lift up to five pounds, and that

he needs reminders to bathe, shower and shave.   (Dkt. 7-2, Pg ID 68-70, 73-75,

79; Dkt. 7-6, Pg ID 284-91).  The ALJ here found:

> After examining the claimant's testimony in light of the
> objective medical evidence of record, I note the claimant
> was not fully credible as to the extent of his impairments.
> The record includes evidence strongly suggesting the
> claimant exaggerated symptoms and limitations.  Over
> the course of treatment, the claimant was noted to have
> positive Waddell's signs on several occasions. . . .
> Although this may not be the result of a conscious
> intention to mislead or exaggerate, nevertheless, it
> suggests the claimant may have been attempting to
> increase his chance of obtaining benefits.
>
> The claimant has been prescribed and has generally taken
> medications for the alleged impairments.  The use of
> prescribed medication generally weighs in the claimant's
> favor, but the medical record reveals the medications
> have been relatively effective in controlling the
> claimant's symptoms. . . . However, despite the
> complaints of allegedly disabling symptoms, the claimant
> testified that he does not currently take any medication
> for depression.  Significantly, there is also no indication
> in the record the claimant has attended counseling for his
> depression.
>
> Although the claimant described certain daily activities
> which are fairly limited, such as difficulty shaving and

showering, two factors weigh against considering these
allegations strong evidence in favor of finding the
claimant disabled.  First, allegedly limited daily activities
cannot be objectively verified with any reasonable degree
of certainty.  Secondly, even if the claimant's daily
activities are truly limited as alleged, it is difficult to
attribute that degree of limitation to the claimant's
medical condition, as opposed to other reasons, in view
of the relatively weak medical evidence and other factors
in this decision.  Overall, the claimant's reported limited
daily activities are considered outweighed by the other
factors discussed in this decision.

(Dkt. 7-2, Pg ID 48-49).

A review of the ALJ's basis for discounting plaintiff's subjective allegations

does not survive scrutiny.  Plaintiff argues that the ALJ's credibility assessment

improperly relied on evidence of "positive Waddell's signs" as "strong" evidence

that plaintiff was malingering or exaggerating his symptoms and limitations.  The

ALJ found that the presence of positive Waddell's signs on several occasions is

evidence "strongly suggesting the claimant exaggerated symptoms and

limitations."  (Dkt. 7-2, Pg ID 48).  Although this evidence is properly documented

in the record and therefore reasonably considered by the ALJ, *see Haynes v.*

*Astrue*, 2012 WL 174716, at *8 (S.D. Ohio Jan. 20, 2012), *adopted by* 2012 WL

1019581 (S.D. Ohio Mar. 26, 2012), the ALJ erred in concluding that selected

references to positive Waddell's signs demonstrated that plaintiff was exaggerating

his symptoms and limitations and thus not credible.  "Waddell's sign . . . does not

detect malingering or symptom exaggeration, but is instead utilized to assess

28

whether a patient's pain or symptoms have a non-organic component." *Hedden v. Comm'r of Soc. Sec.*, 2011 WL 7440949, at *12 (W.D. Mich. Sept. 6, 2011), *adopted by* 2012 WL 663186 (W.D. Mich. Feb. 29, 2012). The Sixth Circuit recently affirmed that "'[t]he literature . . . reveals that there is *no association* between positive Waddell signs and the identification of secondary pain and malingering.'" *Minor*, 2013 WL 264348, at *4 n.15 (emphasis added). Further, although there are isolated references to positive Waddell's signs in the record, that same examiner, Nurse McGuire, also noted back tenderness, positive straight leg raising, and decreased sign bending, flexion and extension and did not state or suggest that plaintiff was exaggerating his symptoms. (Dkt. 7-7, PG ID 356, 358, 360). And while Ms. Kramp noted positive Waddell's signs "suggestive of inappropriate illness behavior," she also noted that plaintiff's "subjective reports of pain and associated disability to be both reasonable and reliable." (Dkt. 7-7, Pg ID 450-51). Thus, to the extent the ALJ discredited plaintiff's subjective allegations and found plaintiff to be exaggerating his symptoms based on isolated references to positive Waddell's signs in the record, that determination is not supported by substantial evidence. *See Hedden*, 2011 WL 7440949, at *12-13 (holding the ALJ's decision to discount plaintiff's credibility and discredit her testimony and subjective allegations based in part on positive Waddell's signs is not supported by substantial evidence); *see also Jadwin v. Astrue*, 2008 WL 4372659, at *8 (S.D.

Ohio Sept. 19, 2008) (ALJ's finding that positive Waddell's signs undermine plaintiff's credibility is not supported by substantial evidence, warranting remand).

Plaintiff also argues that the ALJ improperly noted that plaintiff was not currently taking any medication for his depression and has not received counseling for that impairment.  Plaintiff explained that he is not currently taking medication because the medication made him "feel horrible."  (Dkt. 7-2, Pg ID 78, 84).  While there are numerous references throughout the record of plaintiff receiving treatment and medication for his complaints of depression, the ALJ failed to inquire as to why plaintiff did not seek formal counseling for that condition.  Under Social Security Ruling 96-7p, the ALJ was obligated to consider whether good cause existed for plaintiff's failure to seek treatment for his depression.  SSR 96-7p, 1996 WL 374196, at *7 ("The adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . .").  The undersigned agrees with plaintiff that the failure to seek formal mental health treatment is not a proper basis upon which to discredit the plaintiff.  *See, e.g., Burton v. Apfel*, 208 F.3d 212 (Table) (6th Cir. 2000) ("a Claimant's failure to seek formal mental health treatment is 'hardly probative' of whether the Claimant suffers from a mental impairment . . . [and] should not be a determinative factor in the credibility assessment relating to the

existence of a mental impairment."); SSR 96-7p, 1996 WL 374196, at *7.

Accordingly, this matter should be remanded for further consideration into (1)

whether good cause exists for plaintiff's failure to seek formal mental health

counseling,[4] and (2) whether plaintiff's failure to seek such counseling might be

caused by his underlying mental health condition.  *See Munson v. Astrue*, 2012 WL

4485824, at *10 (E.D. Mich. Aug. 6, 2012), *adopted by* 2012 WL 4475445 (E.D.

Mich. Sept. 27, 2012).

Finally, the ALJ discounted plaintiff's credibility because his "allegedly

limited daily activities cannot be objectively verified with any reasonable

certainty."  However, "[plaintiff] was not required to verify his daily activities with

objective evidence," *McKnight v. Comm'r of Soc. Sec.*, 2012 WL 3966337, at *10

(E.D. Mich. Sept. 10, 2012), and the ALJ failed to support this finding with

---

[4]Plaintiff argues that the ALJ failed to consider plaintiff's alleged inability to afford treatment in assessing his testimony.  However, plaintiff did not testify that he was unable to afford treatment.  Rather, he made that argument for the first time to this Court.  In any event, the Sixth Circuit has held that general assertions regarding a plaintiff's inability to pay for additional tests or services that might have supported his claim are insufficient.  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  The Sixth Circuit recognizes that an inability to pay for medical services may result in less than optimum documentation of a plaintiff's condition, but the reviewing court must work with the medical record presented to it.  "It is doubtless true that a more affluent patient might have obtained a more detailed medical record, but it does not necessarily follow that such a record would have compelled a conclusion that the claimant was disabled.  We must work with the record we have . . . ."  *Id.*

"sufficiently specific reasons," such as citing other evidence in the record that contradict plaintiff's claimed limited daily activities. The undersigned finds that an explanation is necessary because the ALJ's reasoning is not apparent from the record. Therefore, the ALJ's credibility assessment is not supported by substantial evidence. *See McKnight*, 2012 WL 3966337, at *10 (noting that "it is not the job of the reviewing court to determine what the ALJ really intended to say"); *Allan*, 2011 WL 2670021, at *3 (remanding case for further explanation as to how plaintiff's daily activities discount her credibility).

Although the ALJ was not bound to accept plaintiff's statements about his pain and limitations, the ALJ was obligated to follow the Social Security Rules and Regulations and the law of this Circuit in assessing plaintiff's credibility and "clearly state" the reasons for rejecting plaintiff's testimony. The ALJ failed to do so in this case and remand is warranted.

### 3.    The ALJ's RFC Assessment

Plaintiff also argues that the ALJ's determination that plaintiff had the residual functional capacity to perform a limited range of sedentary work is not supported by substantial evidence. The ALJ is ultimately responsible for deciding plaintiff's residual functional capacity. To the extent the ALJ's RFC assessment was based on his unsupported evaluation of plaintiff's credibility, the RFC assessment may not be supported by substantial evidence and it might be necessary

to re-evaluate plaintiff's RFC on that basis on remand.

However, the undersigned will proceed to analyze plaintiff's remaining claims of error based on the present record.  First, contrary to plaintiff's assertion, the non-treating physician opinions do not render the ALJ's RFC determination unsupported by substantial evidence.  As explained above, the ALJ properly evaluated the opinions of Ms. Kramp and Ms. Myers regarding plaintiff's ability to work, and accorded them little weight, to the extent they are inconsistent with the record evidence.  The ALJ also discussed the record evidence of plaintiff's treatment, which demonstrates that plaintiff sought treatment for complaints of back pain, generally denied complaints of fatigue, muscle spasms, muscle weakness or myalgias, only occasionally complained of radiation of pain or tingling/numbness, exhibited stable gait and station, exhibited positive straight leg raising, reported that Neurontin helped reduced the radiculopathy in his legs and his pain was reduced by forty percent.  In addition, in September 2010, plaintiff stated that he "[w]ants disability" and requested a note stating that he cannot work, and his treater advised him that she "feels he needs to get a job, and [she] see[s] no reason to disable him."  (Dkt. 7-7, Pg ID 377-79).  And, in October 2010, that same treater noted an "[i]nappropriate use of vicodin" and concluded that if plaintiff "can stack wood, probably does not need vicodin."  (Dkt. 7-7, Pg ID 386-87).  Finally, the ALJ also properly evaluated and discussed the opinions of the state

33

agency reviewing physicians who concluded that plaintiff could lift and carry 10 pounds, could stand or walk two hours in an eight-hour workday, never climb ladders, ropes or scaffolds and only occasionally crouch, and that he retained the ability to perform simple tasks on a sustained basis.  (Dkt. 7-2, Pg ID 48; Dkt. 7-3, Pg ID 133-35).  All of this evidence provides substantial evidence supporting the ALJ's RFC determination.

Plaintiff's complaint that the ALJ failed to discuss every piece of evidence in the record is not an issue.  The Commissioner must provide a statement of evidence and reasons on which the decision is based, *see* 42 U.S.C. § 405(b)(1), however, it is unnecessary for the ALJ to address every piece of evidence in his written decision. *See Kornecky*, 167 Fed. Appx. at 507-08 ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotation marks omitted); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534-35 (6th Cir. 2001) (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record); *Patrick v. Astrue*, 2008 WL 3914921, at *2 (E.D. Ky. Aug. 19, 2008) ("even though an ALJ must consider the lay testimony, he is not required to spell out in his decision what weight he gave to the testimony").

Further, contrary to plaintiff's claim of error that the ALJ failed to include

34

"any psychiatric limitations in the [RFC]," the ALJ did include functional

limitations for plaintiff's mental impairments.  The ALJ found that plaintiff had

mild to moderate restriction in activities of daily living, mild difficulties in social

functioning and with concentration, persistence or pace, and that he has

experienced one to two episodes of decompensation, and that he should be limited

to performing simple, repetitive and routine tasks.  (Dkt. 7-2, Pg ID 44-45, 48-49).

Plaintiff is correct that a restriction to "simple, routine and repetitive" work is in

essence shorthand for the types of duties involved in unskilled work.  *See Allison v.*

*Apfel*, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000) ("We believe that the

ALJ's qualification that [the claimant] was limited to simple, repetitive, and routine

tasks, within the category of light work, simply means that [the claimant] is limited

to unskilled light work.").  However, a claimant's mild limitations with regard to

concentration, persistence and pace can be accommodated by performing simple,

routine and repetitive work.  *See Alonso v. Comm'r of Soc. Sec.*, 2011 WL

4526676, at *11 (W.D. Mich. Aug. 8, 2011) (holding that mild limitations with

regard to concentration, persistence or pace "could be accommodated by

performing simple, routine and repetitive tasks (i.e., unskilled work).") (citations

omitted), *adopted by* 2011 WL 4502911 (W.D. Mich. Sept. 28, 2011).

The ALJ noted that the DDS mental health professional concluded that while

plaintiff might have trouble with some complex, detailed tasks due to his

depression, he retained the ability to do simple tasks on a sustained basis.  (Dkt. 7-2, Pg ID 48; Dkt. 7-7, Pg ID 123-25).  The ALJ reasonably relied on the ultimate opinion of Dr. Newhouse that plaintiff was capable of working and his opinion therefore is supported by substantial evidence.  *See Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682, at *9 (E.D. Mich. May 17, 2011) (concluding that because the ALJ relied on the opinions in the PRTF to reach his conclusion that the plaintiff had moderate limitations in concentration, persistence and pace, it was reasonable for the ALJ to also rely on the ultimate conclusion in the PRFT that the plaintiff could perform unskilled work on a sustained basis); *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2011) (same).

Further, contrary to plaintiff's claim, the ALJ did not abuse his discretion by not ordering a consultative exam regarding plaintiff's mental condition.  Plaintiff cites the Social Security Administration Hearing, Appeals and Litigation Law Manual ("HALLEX") in support of his claim of error.  However, the HALLEX regulations are not considered binding authority in the Sixth Circuit.  *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008); *see also Alilovic v. Astrue*, 2012 WL 5611077, at *7 (N.D. Ohio Nov. 15, 2012) ("HALLEX is an 'internal guidance tool' for use by ALJs and other staff members, is not published in either the Federal Register or the Code of Federal Regulations, and does not have the force of law."); *Hedden v. Comm'r of Soc. Sec.*, 2011 WL 7440949, at *10 (W.D.

Mich. Sept. 6, 2011) ("[T]he Court is aware of no controlling authority that the HALLEX regulations carry the force of law such that failure to act in conformity therewith is a sufficient basis for relief."), *adopted by* 2012 WL 663186 (W.D. Mich. Feb. 29, 2012). The Social Security regulations grant the ALJ the authority to order a consultative examination if a claimant's medical sources cannot give sufficient information about a claimant's impairments to enable the ALJ to determine whether the claimant is disabled. 20 C.F.R. § 404.1517. However, "the regulations do not require an ALJ to refer a claimant to a consultative specialist." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Even where the record contains evidence of a mental impairment, the Sixth Circuit has declined to impose a duty upon an ALJ to consult a mental health expert. *See Boulis-Gashe v. Comm'r of Soc. Sec.*, 451 Fed. Appx. 488, 494-95 (6th Cir. 2011). Rather, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). Plaintiff's treatment records and his statements about his alleged mental impairments sufficiently enable the ALJ to evaluate the severity of his mental limitations.

Therefore, substantial evidence in the present administrative record supports the ALJ's RFC. However, to the extent the ALJ's RFC is premised on his unsupported evaluation of plaintiff's credibility, plaintiff's RFC may need to be re-

evaluated.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED**, and that the decision of the Commissioner be **REMANDED** for further consideration.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 12, 2013                          s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on March 12, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: John L. Wildeboer, Lynn Marie Dodge, AUSA, and the Commissioner of Social Security.

                                              s/Tammy Hallwood
                                              Case Manager
                                              (810) 341-7850
                                              tammy_hallwood@mied.uscourts.gov